Case 16-6381, Sunshine Heifers LLC vs. Citizens First Bank. Mr. Almassian, you may begin. Thank you. Good morning, your honors. I'm Mike Almassian on behalf of the appellant and I would like to reserve two minutes for my rebuttal time. That's fine. Your honors, I'd like to focus on two general categories where I believe the bankruptcy court erred in its findings on remand. First, the bankruptcy's remand proceeding itself, appellant believes, violates this court's mandate. When Sunshine Heifers was successful before this court in defeating the challenge to the characterization of its lease, it came before this court with a complete record. It came before this court with comprehensive briefing regarding the ownership of the cows at issue. And this court determined, we believe unequivocally, that if the court were to characterize this lease as a true lease, then the consequence of that is that Sunshine Heifers would be entitled to approximately $309,000. The court went on through its analysis and specifically found that the ownership of this herd is a significant asset and that Sunshine Heifers has a reversionary interest in that herd. This court sent the proceeding back to the bankruptcy court for a determination consistent with this court's ruling. From our perspective, that means that the bankruptcy court was tasked with sorting out exactly how many of the cows that were approximated in the record actually belonged to Sunshine Heifers. The only additional information that was relevant to that question that came up in the remand proceedings was the exact number of branded cows sold at auction, 289, and the exact dollar proceeds associated with those branded cows sold at auction, $301,318. In our view, that should have been the extent of the remand proceeding and the court should have awarded Sunshine Heifers a money judgment for that amount and the funds to be turned over consistent with that determination and consistent with the determination of this court. My understanding, and correct me if I'm wrong, is that the district court on the remand decided that Sunshine did not own any of the cows that remained in Purdy's purview. After this court's remand? Right. That's correct, Your Honor. The bankruptcy court made that determination and we believe that's a violation of the mandate. We believe that the record was complete, that in order for this court at the Sixth Circuit level, in order to affect the rights of the litigants and determine whether or not this was a lease or a disguised financing agreement, necessarily required that Sunshine Heifers must have owned at least one cow in dispute. That's why the ownership question was a predicate to the characterization of the lease itself. Otherwise, as citizens... Did the opinion, which I know we know well, did the opinion say anything about Sunshine actually owning one cow or more? I don't want to presume, Your Honor, to tell you the opinion that you wrote. My understanding of... Why don't you point to me where it said that, if that would be helpful. The two sentences that we're relying on. One is at the beginning of the analysis section, which says, if this lease is a true lease, then Sunshine Heifers is entitled to approximately $309,000. The opposing argument is, well, that's just citing to Sunshine's brief. At the conclusion of the analysis section, the court determined that this asset, this herd, is a significant asset. And it's determined that Sunshine has a reversionary interest in the herd. But my understanding, trying to move forward from what happened a few years ago, my understanding is that the bankruptcy court holds a hearing and has lots of testimony from people who are knowledgeable in the local area and who evaluate the tagging of the cows and the branding of the cows. And on the basis of this hearing, the bankruptcy judge concludes that all of Sunshine's cows were disposed of before the bankruptcy sale. And do correct me where I'm wrong here. Am I right that that's so far? You're correct. And let me explain why I think that is either clearly erroneous from a factual standpoint or an error of law from a legal conclusion standpoint. Number one, the bankruptcy court determined that as of this alleged mass branding event that occurred in August of 2012, no one could distinguish the ownership of these cows. That was a finding that was undisturbed by the bankruptcy court. That was a ruling of the bankruptcy court. Subsequently, the court reaches its remand opinion and says that there were no Sunshine Heifer's cows on the debtor's farm any longer because the debtor, Mr. Purdy, testified that between September and November of 2012, he sold approximately 250 cows, most of which were Sunshine's. So the court, on the one hand, determines that this mass branding event in August rendered it impossible for anyone to determine who these cows belonged to and then subsequently says, well, we're going to rely on Mr. Purdy's testimony that he himself could determine that 250 cows were sold and those were Sunshine's. Well, there were other witnesses who testified. Is that not correct? You had a couple of other farmers. You had, I guess, Sunshine's representative who talked about how maybe the lease agreements were not completely complied with in terms of various things. And you also had the bank representative. That's correct. In every one of those circumstances, Your Honor, it discredits the allegation that there was a mass branding. On August 14 of 2012, there was a cow count. The bank did the cow count. They did the appraisal and they said there are 320 branded Sunshine Heifer's cows. These are leased cattle. When Ms. Moore, who represented the bank, testified, she specifically said, that's not our collateral. That's August 14 of 2012. 320 branded cows. Then the bankruptcy court says, well, Mr. Purdy testified that 250 cows were sold between September and November, and therefore there are no Sunshine Heifer's cows on the Purdy property anymore. That's a simple math error. 320 branded by the bank's count minus 250 according to the bank's account. According to Mr. Purdy's testimony, we still have 70 unaccounted branded cows. So we believe that's a clearly erroneous factual determination. The other determination that the bankruptcy court made was an error of law. The error of law occurred because despite Sunshine coming forward with evidence of its brand saying, of the 415 cows sold at the bankruptcy auction, we lay our claim to exactly 289 and we submit evidence to the court in the form of our brand. Citizens steps forward and argues, our security agreement attaches to all 415 cows. All branded cows. Now, they don't meet their obligation to trace proceeds in order to identify collateral that their security interest attached to. They simply say that the debtor cared for and exercised custody and control over this leased property, and therefore our security interest attaches. And the bankruptcy court adopted that and we believe made an error in a conclusion of law that has wide ranging consequences. In this circumstance, it is undisputed that the creditor was not deceived about the collateral on the property. They counted the branded leased cows. They recognized and admitted in specific testimony, this is not our collateral. The reason why that is so significant is because it distinguishes these facts from the brown case that the bankruptcy court nearly exclusively relied upon. In this circumstance, we have the 6th Circuit determining that this is a true lease. Determining that my client has owned property. It is undisputed that the intention of the parties was that there would be leased property owned by Sunshine and there would be debtor's property subject to the bank's security interest. And there is nothing regarding the intention of the parties or the admission of Sunshine that changes that. What's the impact of what appears to have been co-mingling of funds? The debtor did not keep accounts that were separate in terms of, I guess, monies that were advanced by the bank in connection with the security interest taken on cattle and replacement cattle as well, I guess. And with respect to these leases, that there was not a separate agreement that anybody can follow. The path of which payments are due, whom, for what cattle, if that makes sense. It does, Your Honor. And let me answer that very clearly. I think the significance of that is nothing. And here's why. The bank can't trace those proceeds to the cows that we have in question before this court. And I think that in these circumstances, for these 50 cows, the funds may have come from the debtor's account. That's true. In the situation of replacement cows, funds may have come from the debtor's account. That's true. But in other circumstances, my client paid for the cows, branded them, and placed them on the farm. So now we have different characterizations of this property. And then, under that circumstance, it's incumbent upon the secured creditor to trace which ones belong to whom. We'll consent that no one can do that, which is why when you examine the burden of proof standard, you have to examine it not from the bankruptcy court's perspective of saying, I want to know with certainty. You have to examine it from the perspective of, Sunshine has identified its brand as evidence, 289 cows. Citizens Bank can't identify which of the branded cows came from proceeds of the citizens' account. And I think they'd concede that. Is there any evidence as to when Sunshine last paid for cows that were on the Purdy property? July or August of 2012, just months before the bankruptcy proceedings. And how many cows were bought with Sunshine funds at that point? 100 were placed on the farm, and there is a dispute about a reimbursement that my client gave. But he paid for 100 cows that were deposited between July and August of 2012 as the last batch of leased cows that went in. He meaning Sunshine. And those were branded by Sunshine before they were placed on the... They were branded by the party that was delivering, the trucking company would brand the cows before they reached the, or as they got off the truck on the Purdy property. Thank you. May it please the Court, Mr. Almassian. We believe that the central issue here is really whether the bank's security interest in after-acquired property attaches to these cows. Whether they were cows that were coming in pursuant to the lease, or if they were cows that have been referred to now as replacement cows. If our money was in fact used to purchase those cows. There is no dispute that the cows that were used and purchased with funds from the Citizens First account that do not have brands are collateral of the bank. And how many cows does that number roughly? It was the difference in the number. It would have been the 85 head that were sold by the trustee plus ones that were acquired post-petition. One of the questions that have to be decided then is if cows are purchased by the debtor with the funds from our collateral. Does that brand convey title to Sunshine Heifers? Or doesn't the debtor have rights to the collateral at the time that he is receiving the cattle that he has purchased with the proceeds of our collateral? There is no intercompany agreement where Citizens First Bank has agreed to allow the debtor to take money from the account from Sunshine Heifers. From which the debtor has deposited the proceeds from the sale of the milk and sale of cattle. To use those to purchase cattle for the benefit of Sunshine Heifers. But that is in fact what they are attempting to argue that because these have been branded at some point in time. No matter the source of the funds. That those cows have now become their property and not property of either Purdy. Or that Mr. Purdy had rights in those sufficient to allow a security interest to attach. Now unlike the cases that are cited by the appellant, we have more than mere possession of the cattle. Luckily that is probably the distinction between dairy cattle and beef cattle that are being held on the property. These cattle, the dairy cattle, are income producing property. Once they got onto the farm, Mr. Purdy was milking them and deriving the income from the cows. So he had rights and interests in these cows that go beyond mere possession of the cattle. The problem with the tracing issue does in fact go both ways. We don't know of the cattle that were branded and sold by the trustee. If those are replacement cows. If those were cows that were just branded by mistake as some of the evidence would suggest. Are those cows from the first lease? Are those cows from the second lease? So they may talk about we're not able to trace, but frankly neither are they. Who has the burden? Well the court has determined both parties shared the burden. So it becomes I guess is the brand going to be dispositive of the ownership or is the money going to be dispositive of the ownership? Legally as a matter of law, is the bankruptcy court correct in saying that both parties have the burden? That is one that the case that the court cites for that proposition is the only case that I can find that dealt with that issue. Maybe the court would direct the bankruptcy, if this goes back once again, that the burden has to be placed on one or the other. Logically, who should bear the burden? I think logically in this case because the underlying issue initially was not a fight as between the creditor and Sunshine. But this is coming out of a bankruptcy court decision. The initial decision was the question is were these cattle property of the bankruptcy estate? Then Sunshine should carry the burden to establish on their initial motion that these are leased, they were owned, and these cattle are not property of the estate. It is only somewhat derivative that if they are property of the estate, the secured credit would have a claim. I think if we go back and look at how this issue arose, the initial decision from the court was on a motion to shorten the time period for the debtor to assume or reject Sunshine's lease. In that context, I believe that Sunshine frankly should bear the burden that these were not in fact property of the estate and that the debtor's schedules who listed all these cattle as his property were incorrect. Did Sunshine provide its own funds to purchase any of these cows? I think on some that they did. The first lease, it is the first 50 cattle that were clear. I think in that case they did provide those funds. Now whether those cows still existed on the date of the sale or whether they had been culled through, the record can't tell. Those can be not traced. The last lease that Your Honor was asking about, the hundred, it is our contention if you look at the trail of the checks, it is clear that the citizens' first money is what was used to purchase those cattle. Lee Priddy advanced money to Kendall Branstetter to go purchase cattle. Those cattle were delivered and on the farm before the lease was signed with Sunshine and before Sunshine cut the check to Kendall Branstetter to reimburse him what they thought they were reimbursing him. But Branstetter just turned around and gave that check back to Lee Priddy. I don't understand why they wouldn't be considered Sunshine's cows if Sunshine, in fact, reimbursed. Well, at that point in time, they're not providing cattle, they're providing money. To deal with this as a true lease, Sunshine should have taken ownership as their lease anticipated before the debtor took possession and acquired rights in this property, which would have been sufficient. Typically, if it's a leasing equipment or any other source, the leasing company acquires the equipment from a third party so it has good title and then that's then delivered to the debtor pursuant to the lease. Here, as in the case with the very first lease, Sunshine had title to those cattle before they were delivered to Lee Priddy. So it had established an ownership interest. And have them branded and then delivered subject to their ownership interest having been established before the debtor gets possession and begins acquiring rights in them. We had the same problem with the second lease. There was testimony that one of the wire was actually made to Lee Priddy as opposed to Branstetter. Again, it was because Priddy had already advanced funds to acquire. That, taken aside the lease, that is ultimately the problem with all of the replacement cows. Sunshine is not advancing any funds to acquire the replacement cows. All the funds for anything that would be deemed a replacement was coming from the Citizens First Bank account, which would have been from the proceeds, the proceeds of coal cows and the majority of it was from the proceeds from the sale of the milk. In essence, they are forcing Citizens First, as I said, to acquire collateral for them and using our money to do that. Just briefly to address the mandate issue, I think it's clear for the court issue just a general remand from the language that it used. Some of the other cases, Comerica, we cited in a brief that the language remand for further proceedings consistent with this opinion is evidence of a general remand as opposed to limited. But more importantly, the statement that they are hanging their head on in the case about $310,000 being the herd, the value, that would not have been in this record. Because the cows had not been sold at the time that the first appeal was taken. The issue before the bankruptcy court initially, bear in mind that the first evidentiary hearing was within 60 days of the bankruptcy being filed. We're on the initial procedural questions of whether a stay should be terminated for the benefit of the bank or whether Sunshine had asked for a shortening of the time to assume or reject the lease. While there was a lot of testimony as to these ownership interests, the bankruptcy court never got to that question because it just determined and took the easy way out that this was not a true lease and thought that disposed of the question. So when that appeal was taken, there was no evidence in the record as to sales proceeds or how much that herd was worth. That comes into the record for the first time at the district court level in the brief filed by prior counsel for the appellant. And it was in the brief again because the court looks at its decision. Your Honor references the appellant's brief as the citation for that statement rather than the record because there was no testimony. So this case had to go back once there was a determination that the bankruptcy court erred on the lease. There was a legal question of whether this was a true lease, but the court then had to address the question of the ownership of the cattle or whether the security interest attached. I would point out in my time that the bankruptcy court relied extensively on the Brown decision. Comparing that to the decisions that are cited in the appellant's brief, the Roweeder and Cook case specifically, I think the court will find upon examination the distinction in those cases was based upon who paid for the cattle. In Roweeder, the evidence was clear that Mr. Roweeder owned the cattle before they were delivered to the debtor. There was no evidence that the debtor's funds or any other funds were used to purchase those cows. In the Cook case cited by the appellant, again, the evidence was clear that Mr. Cook had tendered to the court copies of the checks where he had purchased the cows. In the Brown case that the bankruptcy court relied upon, pointed out that the funds that were advanced by the lessor in this case, the individual claiming to be owner, had been advanced to the debtor, but the debtor had deposited those into the debtor's account. As a result, co-mingled funds. Because of that co-mingling, ownership could no longer be traced. If we are looking to Roweeder and Cook to be guidance, I think they can be if you believe that Sunshine should have paid for all of the cattle, had ownership of the cattle before those cattle were delivered to Mr. Priddy. However, by allowing the funds here to be co-mingled and using the proceeds from the Citizens First collateral to acquire, I think that gives a break in the ownership that's not overcome by the brand. Briefly on the brand question, would point out that the brand was not registered until this bankruptcy, after the bankruptcy was filed. General bankruptcy principle is the rights of the parties are determined as of the date of the filing of the petition. Why does it matter whether the brand is registered if it is a Sunshine? If it is registered, and had it been registered at the date of the filing of the petition, the court may have given it more evidence, more weight as to the prima facie proof of ownership. I think that was overcome by the record, because there was testimony not only to Lee Priddy that his employees had mistakenly branded other cows. Kendall Brandstetter testified that Lee Priddy's crews would brand cows no matter whether they were coming in as a result of the lease. But is there any confusion among the different brands? Is there any reason why registration is significant? Only that it gives it a statutory presumption. Talking about confusion, let me exhibit mine. As a matter of the facts here, on the one hand, I thought we were being told that Sunshine caused its cattle to be branded before the lease. Before they came onto the property of Lee Priddy. But in the record, and the bankruptcy court relied on evidence that Priddy's employees were kind of randomly branding these cattle. When were they actually branded? Well, some of them were branded before they were delivered to the farm. I'll come back to that because I think it's important. There is evidence that Lee Priddy had in his position a brand. So that his employees were branding. That was the testimony that this was a smelly, bad job, so they would line them up and brand them when they were there. We also have evidence in the one identifiable sale or purchase of cattle by Priddy, after the last lease, Priddy buys 48 head of cattle from Linus Coonan, unrelated to the lease. Pays for it in three checks, there were evidence in the record, in August, September, and October, to buy additional cows. Because there was a prior relationship between Linus Coonan and Sunshine, Mr. Coonan branded those cattle, thinking that those were going to be related to Sunshine. So we know we've got cows now coming in, totally unrelated to a lease, paid for, that we know are branded even by a third party before they hit the farm. So I think we have, depending on the load, some are branded elsewhere, Lee Priddy is branding them some on their... They're all branded with the Sunshine brand. That's the only brand that's part of this case. No other brand is on any of these? None that have been identified. We call them cows or cattle? I'm strictly an end user. What I know about this product, I've learned at Kroger. I will ask your opponent so that we can use that. I think cows is, since it is a dairy operation, cow is probably more appropriate. Thank you. Thank you, Your Honors. I'd like to quickly clarify a couple of points. To begin with, I believe it's Holstein Heifers, Your Honor. But would we use the word cow or cattle?  Cattle. Let me clarify the number of cattle purchased by my client from undisputed funds that came from my client. With respect to lease number one, we placed 45 head on the farm from another dairy. These were cows that we brought in to the Purdy farm. Lease number two, we supplied 75 head from Mr. Layton and another 87 head in two loads, and we made wire transfers directly to Mr. Layton for those cows. The next load came in from Mr. Linus Cunin. There were 40 head, and we sent a check directly to him. In lease number three, we acquired another 38 head from Mr. Cunin, and we paid him directly. That's 285 head of cattle that went in with my client's money. The reason why that is significant, Your Honors, is because we get back to the burden and the tracing issues. We know that we acquired these cattle. The appellee then distinguishes the key case and says, in Brown, there was commingling of funds, and that's the distinguishing feature. But we have no commingling of funds. The appellee pivots and says, what we have here is the debtor using cash from our bank account, not commingled funds, to acquire certain cattle. Okay, the case law reconciles that by saying, what was the intent of the parties? Who owned those cows and that cattle? How did you distinguish them? Well, because they were branded. And the import of the timing of the brand that the bankruptcy court placed is an error as well. Consider this fact. We brought in cows. He brands those cattle. He takes them into the state of Kentucky where he doesn't have any cattle at that moment in time. The cows are already branded. We register, according to the statute, our brand. What the bankruptcy court is saying is that since you didn't actually physically brand those cows until, if you didn't do it after the brand was registered, then the brand statute gives you no weight of evidence. And we think that is an incorrect determination. We think we can rely on the brand, and that places some weight of evidence on our side of the scale to satisfy our burden, while the appellee hasn't satisfied its burden to trace which of the 289 cows are attached to its security interest. So Mr. Purdy testifies that I think it was maybe between September and the filing date of the case, the filing date of the Chapter 12, that he sold something like 250 cattle or cows. And he says that most of those were Sunshine cows, correct? Correct. I guess what does the record show in terms of the 285 that you say were delivered in these several shipments? How many of those may have been sold? It seems that the bankruptcy court found that most of the 250 that were sold, based upon Mr. Purdy's testimony, were Sunshine cows. Right. We would say, number one, that the bankruptcy court already determined that as of this mass branding event, no one could have determined if these were all Sunshine cows. And secondly, we know that the bank had consented and identified exactly 320 branded cows as of August 14, 2012. Then between September and November, he apparently sells 250. And somehow the bankruptcy court gets to the conclusion that if you start with 320 branded cows August 14 of 2012, and you go through August and November and you sell 250 of the 320, you somehow get to zero. We believe that's clearly erroneous. Does Sunshine have, I guess it does come down to sort of the burden here. So let's say it's not zero, but Sunshine can't show that it's 285 either, right? Not with certainty, Your Honor, but we would submit that we have placed evidence of the brand forward consistent with the statute that satisfies our burden, the 289 branded cows belong to Sunshine, and when you view that in the vacuum of evidence supplied by the bank regarding those exact same cows, we win that burden of proof analysis. Okay, time has expired. I assume that, just speaking for myself, thank you for your arguments today that you have made all efforts to resolve your disputes using whatever resources may be available, including our mediation services. So I just mention that, I'm not suggesting you do anything further or requiring it. I just am mentioning that as a thought that comes to mind. Anyway, we appreciate your arguments. I guess we've learned a fair amount today about Holstein heifers, cows, cattle, and the like. Case will be submitted. Appreciate it again. Thank you. And you may call the final argued case today.